

UNITED STATED DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BETTY ANN GROSS, for herself and as Personal Representative of the Estate of Merle J. Lohr, Deceased; JESSICA LOHR, an individual; and BETTY ANN GROSS, as Guardian Ad Litem for J.L. and J.L., minor children of Betty Ann Gross and decedent Merle J. Lohr | \* | CIV. 06-4211 |
| Plaintiffs, | \* | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| -vs- | \* | |
| UNITED STATES OF AMERICA, | \* | |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiffs, Betty Ann Gross, for herself and as Personal Representative of the Estate of Merle J. Lohr, deceased, Jessica Lohr, and Betty Ann Gross as Guardian Ad Litem for J.L. and J.L, minor children of Betty Ann Gross and decedent Merle J. Lohr, have filed suit against Defendant, the United States of America, under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680. In their Complaint, Plaintiffs allege wrongful death due to medical malpractice, intentional infliction of emotional distress, as well a claim for Decedent's pain and suffering. Defendant has filed a Motion for Partial Summary Judgment, Doc. 51.

## BACKGROUND AND RELATED FACTS

Betty Gross ("Ms. Gross") and Merle Lohr ("Decedent") met in the 1970's and began a relationship in 1987 after the death of their respective spouses. During their relationship, Betty and Merle had three children. Betty and Merle never married. Merle died on September 17, 2003,

following a lengthy illness and numerous medical conditions for which he was being treated at the Veterans Administration (VA) Hospital in Sioux Falls, South Dakota.

On October 25, 2006, Plaintiffs filed a Complaint in the United States District Court for the District of South Dakota Southern Division. In their Complaint, Plaintiffs allege a claim for wrongful death in which they claim the following approximate damages: (1) $1,000 spent for the funeral of Decedent,[1] Compl. ¶ 17; (2) $15,000 for loss of Decedent's future income, Compl.¶ 18; (3) $3,000.000 to Decedent's children for the lost companionship, advice, support, and comfort of their father, Compl. ¶ 19; (4) $1,000,000 for the loss of companionship and consortium suffered by Ms. Gross, Compl. ¶ 20; (5) $4,000,000 for the medical and emotional pain, suffering, and anguish which required medical intervention, suffered by all Plaintiffs, individually and collectively, Compl. ¶ 21. Plaintiffs also state a claim for Decedent's pain and suffering in which they claim the following approximate damages: (1) $1,000,000 for the pain, humiliation, embarrassment, and mental and emotional distress suffered by Decedent as a result of Defendant's medical treatment, Compl. ¶ 22; (2) $1,000,000 for the pain, suffering, humiliation, embarrassment, mental and emotional distress suffered by Decedent "from the procedures and treatment which Defendant required him to submit to which were, in themselves, a direct and proximate result of the medical malpractice of Defendant," Compl. ¶ 24. Finally, Ms. Gross alleges a claim for intentional infliction of emotional distress based on offensive comments allegedly made by nurses and other employees of Defendant. Ms. Gross accordingly seeks to recover approximately $1,000 in professional counseling fees as well as $1,000,000 for the concern she suffered that her children might become a target of similar attacks and to compensate her for the weight loss and insomnia she suffered as well as the distrust she developed of Caucasians in helping professions, Compl. ¶ 27.

---

[1] Defendant indicates in its Memorandum in Support of Summary Judgment that Plaintiffs claim $280,000 for "unpaid medical bills and funeral expenses." Although Exhibit B3 to Ms. Gross's deposition indicates that on January 9, 2004, Plaintiffs filed an administrative tort claim with the VA seeking such relief, Plaintiffs do not allege a claim for paid or unpaid medical bills in their Complaint. Because a claim for unpaid medical expenses has not been pled, the Court will not entertain a claim for such relief at trial.

Defendants have moved for summary judgment on: (1) all of Ms. Gross's claimed damages for the alleged wrongful death of Decedent, Compl. ¶¶ 17-21; (2) the $4,000,000 claim by Decedent's children for the mental and emotional pain suffered as a result of the alleged wrongful death of Decedent, Compl. ¶ 21; (3) Ms. Gross's claim for intentional infliction of emotional distress, Compl. ¶¶ 25-27.

Plaintiffs have not responded in any manner to Defendant's motion. However, even if an adverse party does not respond, the Court may enter summary judgment against the adverse party, if appropriate. *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 427 (8th Cir. 1997). The Court will accordingly analyze the merits of Defendant's Motion for Partial Summary Judgment.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988).

# DISCUSSION

Since all but one of the incidents that forms the basis of Plaintiffs' Complaint occurred in South Dakota, South Dakota law applies in determining the rights and liabilities of the parties in this case. *Olson v. United States*, 175 F.2d 510, 512 (8th Cir. 1949) ("[T]he standards and tests of the state where the accident occurred controlled on questions of negligence and the nature and extent of recovery including the capacity and rights of the plaintiff and the liability of the United States.").

**Wrongful Death Claim**

In their Complaint, Plaintiffs allege that Decedent's death was a proximate result of medical malpractice committed by Defendant. In their wrongful death claim, Plaintiffs make the following approximate claims for damages: (1) $1,000 spent for the funeral of Decedent, Compl. ¶ 17; (2) $15,000 for loss of Decedent's future income, Compl. ¶ 18; (3) $3,000,000 to Decedent's children for lost companionship, advice, support, and comfort of their father, Compl. ¶ 19; (4) $1,000,000 for the loss of companionship and consortium suffered by Ms. Gross, Compl. ¶ 20; (5) $4,000,000 for the great mental and emotional pain, suffering, and anguish, which required medical intervention, suffered by Plaintiffs, individually and collectively, as a direct and proximate result of the medical malpractice committed by Defendant, Compl. ¶ 21.

Defendant has moved for summary judgment on: (1) all of Ms. Gross's claimed damages for the alleged wrongful death of Decedent, Compl. ¶¶ 17-21; and (2) the $4,000,000 claim by Decedent's children for the mental and emotional pain suffered as a result of the alleged wrongful death of Decedent, Compl. ¶ 21.

### A. *Jurisdictional Question*

Defendant contends that the Court lacks subject matter jurisdiction over Plaintiffs' claims

for reimbursement of funeral and medical expenses[2] under the Veterans Judicial Review Act of 1988 ("VJRA"), 38 U.S.C. § 7251 (1988), because Plaintiffs failed to pursue a claim for reimbursement with the Board of Veterans' Appeals. The VJRA provides that the Secretary of Veterans Affairs "shall decide all questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits," 38 U.S.C. § 511(a), and further states that "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by action in the nature of mandamus or otherwise." 38 U.S.C. § 511(b).

In support of its argument that these claims fall within the exclusive jurisdiction of the VJRA, Defendant cites to *Hicks v. Veterans Admin.*, 961 F.2d 1367 (8th Cir. 1992) and *Payne v. United States,* 2003 U.S. App. LEXIS 4915 (8th Cir. 2003) (per curiam). In *Hicks*, 961 F.2d at 1368, the plaintiff alleged that his disability rating and benefits were reduced in retaliation for exercising his First Amendment rights by complaining about his treatment at the Veterans Administration (VA). The court in *Hicks* rejected the plaintiff's argument that because his claim was based on an infringement of rights arising under the Constitution, his claim fell outside the purview of the VJRA. *Id.* at 1370. The court held that the plaintiff's claim that "unconstitutional retaliatory conduct was the cause of the reduction of his disability rating and benefits *is essentially a challenge to the reduction of benefits* on a constitutional basis," and is therefore encompassed by the VJRA. *Id.* (emphasis added). The court in *Hicks* accordingly concluded that the district court had no jurisdiction to hear such a claim. *Id.*

In *Payne*, 2003 U.S. App. LEXIS at *993, the Eighth Circuit reversed in part the district court's decision dismissing the plaintiff's claims to recover disability benefits and tort damages. Although the plaintiff's injuries resulted from his exposure to Agent Orange while on active duty in Vietnam, the VA physician examining the rash the plaintiff had developed recommended only that he clean it out with soap. *Id.* at *992. The VA then ruled that the plaintiff's skin condition was

---

[2]The Court will focus on Defendant's argument as it pertains to Plaintiffs' claim for funeral expenses since the Court has already concluded that it will not entertain a claim for paid medical expenses as a result of Plaintiffs' failure to plead such a claim for relief.

not service connected and denied him disability benefits. *Id.* The Eighth Circuit held that to the extent that the plaintiff challenges the VA's denial of disability benefits, such decision can be viewed only in the exclusive appellate review scheme established by the VJRA. *Id.* at *993. The court, however, did not state that the plaintiff's medical malpractice claims were preempted by the VRJA, but instead went on to analyze whether such claims were time-barred under the Federal Tort Claims Act. *Id.*

While both *Hicks* and *Payne* support the Defendant's statement that "[t]o the extent that a claim is made for the denial of VA benefits, the court lacks subject jurisdiction," the Court concludes that it has jurisdiction over Plaintiffs' claim for funeral expenses because it is not a claim for VA benefits, but rather damages sought in a wrongful death action. Such relief has been held by the Supreme Court of South Dakota to be compensable under the State's wrongful death statute. *Lanning v. Schultz*, 149 N.W.2d 765, 767 (S.D. 1967).

### B. Merits of Wrongful Death Claim

i. Claim for Grief and Mental Anguish

The Court grants summary judgment on Plaintiffs' $4,000,000 claim for the great mental and emotional pain, suffering, and anguish, which required medical intervention, suffered by them, individually and collectively, as a direct and proximate result of the alleged medical malpractice committed by Defendant. Under the laws of South Dakota, the grief and mental anguish suffered by beneficiaries because of the wrongful death is not a compensable injury. *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 119 (S.D. 1993) ("A pecuniary injury encompasses more than strictly economic losses in that it includes 'the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection,' but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death.'"); *see also In re Estate of Howe*, 689 N.W.2d 22, 31 (S.D. 2004) ("Non-economic pecuniary injury does not include the 'grief and mental anguish' suffered because of the loss.").

ii. Wrongful Death Claim by Ms. Gross

Excluding the claim for grief and mental anguish, in the wrongful death claim asserted by Plaintiffs, Ms. Gross makes the following personal claims for damages: (1) $1,000 spent for the funeral of Decedent, Compl. ¶ 17; (2) $15,000 for loss of Decedent's future income, Compl. ¶ 18; and (3) $1,000,000 for the loss of companionship and consortium suffered by Ms. Gross, Compl.¶ 20.

Defendant contends, and the Court agrees, that Ms. Gross is not entitled to damages arising from the alleged wrongful death of Decedent because Ms. Gross and Decedent were never legally married.

The laws of South Dakota provide that a *spouse* may claim damages relating to loss of consortium and/or wrongful death. The statute[3] governing wrongful death actions provides that "[e]very action for wrongful death shall be *for the exclusive benefit of the wife or husband and children*, or if there be neither of them, then of the parents . . . of the person whose death shall be so caused." SDCL 21-5-5 (emphasis added). Similarly, the South Dakota Supreme Court has stated that loss of consortium is "a right growing out of the marital relationship . . . [which] includes the right of either spouse to the society, companionship, conjugal affections and assistance of the other." *Pankratz v. Miller*, 401 N.W.2d 543, 546 (S.D. 1987).

It is undisputed, however, that Ms. Gross and Decedent were never considered husband and wife under the laws of South Dakota. Ms. Gross stated in her deposition that she and Decedent had never married, Ms. Gross Dep. 37:9-18, and the laws of South Dakota provide that only common-law marriages established through consent and consummation before the enactment of SDCL 25-1-29 in 1959 will be recognized as such. Since Ms. Gross and Decedent did not begin their

---

[3]A claim for wrongful death did not exist at common law and only arises from statute. *Tufty v. Sioux Transit Co.*, 10 N.W.2d 767, 768 (S.D. 1943).

7

relationship until 1987, after the death of their respective spouses, their relationship does not qualify as a common law marriage under the statute. As a result, Ms. Gross may not recover damages for loss of consortium[4] nor for the alleged wrongful death of Decedent.

The Court therefore grants Defendant's request for summary judgment as it pertains to any interest claimed by Ms. Gross in the wrongful death action.

      iii.     Claim for Reimbursement of Funeral Expenses by Estate

While Ms. Gross may not personally claim reimbursement for $1,000 in expenses paid for Decedent's funeral, the Court will entertain such a claim by Decedent's estate at trial. *Lanning v. Schulte*, 82 S.D. 528, 532 n.1 (S.D. 1967) (citing *Steckman v. Silver Moon, Inc.*, 90 N.W.2d 170 (1958)) (treating a claim for medical and funeral expenses as relief sought under the wrongful death statute, although Decedent's estate could have pled such a claim for relief under the survival statute).

      iv.     Wrongful Death Claim by Children of Decedent

In the interest of clarity, the Court notes that although Ms. Gross is not entitled to share in the $15,000 claim for loss of Decedent's future income, Compl. ¶ 18, Decedent's children are not precluded under the wrongful death statute from recovering this benefit in addition to their $3,000,000 claim for the lost companionship, advice, support and comfort of their father, Compl. ¶ 19. SDCL 21-5-5; *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 119 (S.D. 1993)

---

[4]The Court notes that even if Ms. Gross and Decedent had been legally married, Ms. Gross's right to damages for loss of consortium would be limited. *Zoss v. Dakota Truck Underwriters*, 590 N.W.2d 911, 914 (S.D. 1999). In *Zoss*, the court stated that a claim for loss of consortium "exists only during Decedent's lifetime prior to death" and that "no right for loss of consortium exists for the wrongful death of a spouse." *Id.* at 914. Thus, any claim by Ms. Gross for loss of consortium would have been limited to the period of time from which Decedent was in the hospital to the time of his death. *Plank v. Heirigs*, 156 N.W.2d 193, 196 (S.D. 1968) (citing *Hoekstra v. Helgeland*, 98 N.W.2d 669 (S.D. 1959)).

(stating that a beneficiary may also recover for "the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection.'"); *Bethel v. Janis*, 597 F.Supp. 56, 60 (D.S.D. 1984) (citing *Snodgrass v. Nelson*, 369 F.Supp. 1206, 1212 (D.S.D. 1974), *aff'd*, 503 F.2d 94 (8th Cir. 1974)) ("[P]roof of past and future gross earnings is certainly relevant in determining the level of future benefits that could be reasonably expected from the decedent.").

**Ms. Gross's Claim for Intentional Infliction of Emotional Distress**

Ms. Gross has asserted a claim for intentional infliction of emotional distress based on offensive comments she claims were made to her by nurses at the Veterans Administration (VA) hospital.[5] The comments Ms. Gross claims caused her distress as are follows:

1) Ms. Gross and two of her children were stopped by a male nurse of Asian descent before entering Decedent's room at the Fort Snelling VA and asked whether they were U.S. citizens. (Ms. Gross Dep. at 65:16-66:5; 66:15-24.)

2) A nurse named Naomi at the Sioux Falls VA told Ms. Gross "that she was pretty upset that American Indian women married U.S. soldiers and were having kids[.]" (Ms. Gross Dep. at 89:9-13.)

3) A heavyset nurse with blonde graying hair was trying to force Decedent to walk to his wheelchair to go to the bathroom at the Sioux Falls VA. The nurse said that "he is very capable of getting up, getting in that wheelchair and going to the bathroom."

---

[5]In Defendant's Memorandum in Support of its Partial Motion for Summary Judgment, Defendant suggests that the children may also be alleging a claim for intentional infliction of emotional distress because Ms. Gross claims in her deposition that she needed to protect her children from the comments. Liberally construing the Complaint, the Court does not find that Decedent's children are also alleging a claim for intentional infliction of emotional distress. Furthermore, the Court lacks jurisdiction to hear such a claim because Plaintiffs failed to exhaust their administrative remedies with the VA.

The nurse then hollered about Decedent always calling the nurses. When Ms. Gross responded that "if you don't like to take care of him, leave," the nurse asked the administration to be removed from his case. Ms. Gross reported the incident to a male nurse who then removed the female nurse from Decedent's care. (Ms. Gross Dep. at 89:16-90:18.)

4) Ms. Gross described another incident at the Sioux Falls VA in which she went to get Decedent something to drink and found her kids downstairs crying and Decedent sitting outside the facility. When Ms. Gross told Decedent that he could not be outside, he responded that the nurse had told him that "If you're old enough to make these kids, then you're old enough to take care of them. Take them outside." Ms. Gross responded that Decedent was outside and was scared. (Ms. Gross Dep. 91:14-23.)

5) A nurse, Jody Heins, called Betty one time from the Sioux Falls VA when Decedent was refusing treatment. While waiting to speak with Decedent on the phone, Ms. Gross overheard the nurse say to Decedent: "If you don't do this procedure, then I'm just going to send you home and you can go home and die. You can go home and die, Mr. Lohr." (Ms. Gross Dep. 93:1-12.)

6) Because Decedent was scared, Ms. Gross and her children were sleeping in Decedent's room on the floor one evening while Decedent was in the back room. Ms. Gross awoke to hear Naomi, a nurse at the Sioux Falls VA who had supposedly been removed from his care, say to Decedent, "Why don't you just go home and die? Go home and die." Both Ms. Gross and her daughter, Jessica, got up and peeked into the room to see Naomi standing real close to Decedent. Ms. Gross told Naomi that "If anybody is going to die, it's not going to be him." She then told Naomi to "get out of here" and the nurse promptly left. (Ms. Gross Dep. at 94:16-25.)

### A. *Failure to Exhaust Administrative Remedies*

Defendant argues, in part, that Ms. Gross's claim for intentional infliction of emotional distress should be dismissed for failure to exhaust administrative remedies. The Federal Tort Claims Act provides that a plaintiff may seek money damages in a district court for the "wrongful act[s] of omission[s] of any employee of the [federal] Government while acting within the scope of his employment." 28 U.S.C. § 2679(b)(1). Prior to bringing an action in district court, a plaintiff must first file the claim in writing to the appropriate federal agency within two (2) years after the claim accrues. 28 U.S.C. § 2401(b). The written claim to the agency must sufficiently describe the nature of the plaintiff's injuries and the dollar amount claimed therefor. 28 U.S.C. § 2675; *Melo v. United States*, 505 F.2d 1026, 1029 (8th Cir. 1974). In the absence of such compliance, a district court has no subject matter jurisdiction over the claim. 28 U.S.C. § 2401(b).

The Court does not have subject matter jurisdiction over the intentional infliction of emotional distress claim asserted by Ms. Gross because she failed to exhaust her administrative remedies with the VA as to this claim. The Court finds that none of the administrative claims that Ms. Gross filed with the VA list a claim for emotional distress. (Ms. Gross Dep. Ex. B.) The claim filed on June 17, 2003, Ms. Gross Dep. Ex. B1, references only "attached papers," which were not received by the VA nor have been produced by Ms. Gross in response to requests by Defendant. (Def. Summ. J. Br. at 8, n1.) The subsequent two claims filed on January 9, 2004, make no reference to emotional distress or to rude or racially motivated comments made to Decedent, Ms. Gross, or their children. (Ms. Gross Dep. Ex. B2-3.)

The Court therefore dismisses Ms. Gross's intentional infliction of emotional distress claim for failure to exhaust administrative remedies.

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Partial Summary Judgment, Doc. 51, is GRANTED. The Court will hear the following claims at trial: (1) claim by Decedent's children for $15,000 in lost future income of Decedent, Compl. ¶ 17; (2) $3,000,000 claim by Decedent's children for lost companionship, advice, support and comfort

of their father, Compl. ¶ 19; (3) claims for Decedent's pain and suffering, Compl. ¶ 22-24; (4) Estate claim for $1,000 in funeral expenses.

Dated this 5th day of February, 2009.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Colleen Schulte
DEPUTY